The third case is number 21-1892, United States v. Angel Luis Cruz-Agosto and number 21-1893, United States v. Angel Luis Cruz-Agosto. At this time, would counsel for the appellant please introduce herself on the record to begin. Good morning. May it please the court. I'm here for Angel Luis Cruz-Agosto. This is Leticia Casandú-Ferry. In this case, the defendant was imposed two very, very harsh sentences that more than doubled the total recommended by the courts. The plea agreement had various elements that were meant to be seen together because, and I mean as to the sentence in the base felony, as well as the revocation of supervised release. If we don't see those four elements in context as a package that was really negotiated, we can't see that the government actually made a promise of leniency to this defendant. And after making such a promise that was implicit in the four elements that I will mention briefly, it's just sort of treated all those terms casually, and that was the breach by the government. The way in which those terms were treated casually was that in one case, two out of three elements were not even mentioned to the court in the violation of supervised release. The one element that was the government's promise was misstated by the government to the court, and that misstatement was very significant. So in the felony case, the plea agreement had three elements, all of them important. It was joint. It means there's an agreement to the parties as to what's happening. And the joint agreement of a fixed sentence of 37 months was irrespective of the criminal history category. But that third element is hugely important. Why? It meant the government was in agreement with the variant sentence that they proposed, the 37 months. Counsel, may I ask you, do you agree that there was no objection below that the prosecution had breached the agreement? So we're looking at your arguments under the plain error standard? Yes, that is the case. And addressing that, part of my argument goes to the first two factors. There were errors, and they were clear and obvious. In case 20-0-30, the felony sentencing, the court asked the government to present its position. The prosecution said just that we stand by the violent plea agreement and recommend 37 months. Just that. The fact that it was a joint agreement and the fact that the recommendation was irrespective of CHC, those were the underpinnings of that 37-month sentence. When the parties reached this agreement, they knew that the defendant would likely be placed in a category 5 rather than 3. This meant 57-71 months was the guideline range versus 37-46. As such, this is why we say the government promised leniency. When you promise leniency and you don't even state the factual objective underpinnings for the sentence that you are recommending jointly with the defense, the bargain to get the prosecutor's statement in court is lost. A mention of 37 months, just that we abide by in 37 months, it's wholly incomplete and entirely void of the context in which that sentence was recommended. Can I ask you a question? It seems to me you're arguing that the prosecution here had an obligation to do more, or that by omission, by not doing more, they breached the plea agreement. But have we said that omission alone will constitute a breach? It depends on what you mean by more. To me, this is not more. This was the plea agreement. And if you're required, the prosecution's required – I mean the bargain that the defendant is making is for a statement in court for the terms of the plea agreement. If you leave two of those elements outside of – don't even mention them, then where is the prosecution's statement? I'm just not following. What is it that they didn't say that they had to say? They had to say that they were jointly recommending a 37-month sentence, and that that sentence, that recommendation, was irrespective of the criminal history category. But isn't that obvious from the recommended amount? Is it obvious always? You just said that if the criminal history was taken into account, it couldn't be 37 months. If the five categories were criminal history, was they taken into account? No. That's why – That's what I'm saying. So when you say 37 months, and the judge knows it, everybody knows what the range is. So by saying I recommend after the defendant said – after the category said I recommend the jury be joined, just like he's recommending it, I'm recommending it. That's consistent with it being joint. And then the amount is 37 months, which is an amount that's irrespective of the criminal history. So what's missing? Well, the fact that a very minimum is required of the prosecution in these cases. And the bargain has been clearly stated and restated by this court. It is for the prosecutor's statement in court such that the prestige of the government is behind the recommendation and the agreement. And actually, the statement is supposed to involve some attempt to – not persuade, to influence the court. They have the potential to influence the court. So if you do not even mention the entirety of the plea agreement, you just leave it up for – let me presume that the judge understood. I could have come here and said, I'll presume you understood my argument, so I'll rest on my grief. That's not meeting my ethical duty. And this is different. This is the government in a plea agreement speaking about the recommendation for the defendant, but there is still an ethical obligation that binds that attorney to be fully truthful of what was the actual agreement rather than leaving more than half of it out. You mentioned there was a misstatement as to a part of it, as opposed to just an omission. What's the misstatement? The misstatement was regarding the sentence in the revocation of supervised release. The court – and this is another element that's very important – the court reserved the right to argue for four months consecutive sentence. And when the prosecution spoke, they said they would – the agreement was that they would argue for four months consecutive. So that's very different. If you're reserving the right – this is a fourth element that hinged on the first three. It's a 37-month sentence. I don't understand that point, especially even if that has some weight. Didn't the prosecutor here not argue for a consecutive sentence in the revocation? In the revocation, my interpretation is that was the prosecution was wholly ambiguous about its position. Well, they said they would leave the consecutive sentence to the court's discretion. And I think from the court's response, I sort of read that as saying the court thought the government was requesting a concurrent sentence. And they definitely said, we leave it to your discretion. The prosecution said, we leave it to your discretion. But before saying that, or there was absolutely no need to say that, the prosecution should have said the prosecution is relinquishing its reserved right because the sentence imposed for the felony was so high. It was almost twice as much as what was recommended. At that time, if he only reserved the right to recommend four months consecutive, it meant they wanted to see what happened in the first sentencing such that the total sentence for this defendant would not be more than 41 months, the 37 jointly recommended, close to four, that the government reserved the right to argue. So at that point, clear words were required of him. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the United States would introduce herself on the record. Good morning, Your Honor. This may have pleased the court. Now, Mr. Cruz has failed to show any error, let alone a plain and obvious error that prejudiced him in the prosecution's fulfillment of his duties pursuant to the plea agreement at Mr. Cruz's sentencing hearing. Now, it's clear that a defendant is entitled to the benefit of the bargain in the good faith of the prosecution when entering into a plea agreement. And in this case, he got that. This court has explained that there's no magic formula. There's no specific set of rules in determining whether a prosecutor has fulfilled his burden under the plea agreement. And what we must do is look at the overall conduct, the totality of the circumstances, to see whether the overall conduct of that prosecutor was reasonably consistent with the promises in that plea agreement rather than the reverse. Counsel? Yes, Your Honor. It struck me that what is potentially different here is the government agreed to a substantial downward variance from the guideline sentence, correct? And so I wonder if that's the situation, why doesn't the government need to do a little bit more than just say 37 months? Well, two things, Your Honor. I would like to clarify that at the change of plea hearing, it was at least when they were explaining the terms of the plea agreement. Because in the sentencing recommendation, it does speak of a variance. But the variance that it's actually speaking to is for the revocation hearing. Because this was a machine gun that would have been classified as a grade A, 12 to 18. And when the government was going to request a four-month consecutive, that was the variance sentence. There was actually a back and forth. And if you look at pages 37 to 39 of the felon's appendix, when the government was giving the sentencing recommendation and said 37 months, the court said, wait, but I don't understand why you're saying variance. Because 30 to 37 in a criminal history category of one is a guideline sentence. The prosecutor then explains, we don't anticipate him to be a criminal history category of one. He was, in fact, a felon. And he was on supervised release. That's why we have this revocation sentence. So that's why we're fixing it irrespective of the criminal history category. Then the defense attorney comes in, like I said, on page 39. And she said, your honor, it's just part of the agreement referring to the revocation sentence. And that's why we're going to be requesting at the time of revocation. But for this agreement, it's not the variance sentence. The parties had thought that he would have fallen into the criminal history category of three. Because at the time of his first conviction, he had three points plus the two status points, which would have made him a criminal history category of three. So at the time, if we look at what was said in the change of plea hearing, they thought that that was a criminal three guideline sentence. Getting to the second part of your honor's question. If he was criminal history three, what would the range be? It would have been 30 to 37, your honor. Let me just double check that. The criminal history for, yes, it would have been 37 to 46. Excuse me. So that would have been the lower end. It would have been a joint recommendation for the lower end. But counsel, we thought that, please correct me if I'm wrong, was an agreement to treat him as being a lower criminal history category than he actually was. You're saying I'm wrong about that? Your honor, they're saying that the agreement was for 37. 37 is the lower end. If he's three. If he's a three. Is he actually a five? He was actually a five because part of that previous conviction, which was a federal drug trafficking conviction, there was two other state felonies that were included as relevant conduct for that. But for now, his machine gun case, they're not relevant conduct for the machine gun case. So he actually had six additional points added. That's what moved him from the three to the five. And at the sentencing hearing, counsel for the defendant stated, we think this is over-represented. It was relevant conduct for the first case. But it's not for this case. But the court can take that into consideration when balancing the 35-53 factors. So the defendant's position, they contested whether it would have been five versus three. So the agreement was, OK, effectively, let's treat it as three. Well, the parties, the agreement is, no matter what his criminal history category is, both parties are going to. I know. But was the fight about whether it was three or five? It was not a fight, Your Honor. Because there was, for example, in these plea agreements in the past, sometimes the defendants can. Nobody thought it was that he had no criminal history. No. The prosecutor voted. The range of the debate as presented to the district court that led to the plea agreement, was the government originally was saying criminal history five? Well, that's not clear from this record, Your Honor. What's clear is that the government was. What were you just telling us about? I was telling you what the defense did and then what was the difference between the first PSR and the second PSR and what moved him. Was the first PSR saying five? Look, no. I'm saying the first PSR that included those two previous felonies at zero criminal history category points because his drug trafficking. They were relevant conduct to the drug trafficking. So maybe when we see what the defense argument was and when she said 37 would have been guideline, maybe she was operating under the false understanding that because he was a three in his first federal conviction, all we have to do is add two more. And that is a five. And that falls squarely. Those criminal history category points fall squarely within a criminal history category of three. That's what can be inferred. That's what can be gleaned from reading the defense attorney's statements at the change of plea hearing where she said, no, no, no, this is a guideline sentence that we would be asking for the 37 months. Can we tell from this record that the lowest possible criminal history category that was in play was three? Yes, Your Honor. Okay. Yes, Your Honor. Thank you. And what the government contracted to do was recommend a 37-month sentence irrespective of that. It was the low range of the guidelines. It was the low range of the guidelines. And that is exactly what the government did. On page 60 of the appellant's appendix, after the defendant got up and explained the whole situation about the different criminal history categories, the government got up and affirmatively explained that it was standing by the plea agreement and recommending the 37-month sentence. No more was needed. Now, faced with this reality, Mr. Bruce is trying to include an element of advocacy, a requirement of advocacy. But that just goes against this court's precedent. In United States v. Lessard, which is cited in our brief, this court specifically stated there's no affirmative obligation or explanation on a prosecutor when the plea agreement says recommendation. And Lessard cites United States v. Montañez-Quiñones, which is also cited in our brief, which states the prosecutor's not required to discuss the specific aspects of the government's thinking. Here, what we have is the government standing up and, in very plain terms, saying 37 months is the proper sentence. In no way is it taking away with one hand what it had given with the other. In no way is it lamenting the terms of the plea agreement or saying something for the district court to believe that some different sentence was appropriate. Just so I get what the government views. I mean, take an example where the recommendation would even, let's say, make it a variant sentence. So they say 37, let's just imagine that that would be a variant sentence. I know you're saying it's not here, but imagine it was. And on your account, all you have to say is I recommend 37 months, right? Yes, Your Honor. Okay. And the judge says, why? Is there any reason for that? Does the government at that point have an obligation to explain? Well, Your Honor, I would think in the duty of candor to the court in being specifically asked, the government would give its explanations. But at this point, especially when we're talking about a downward variance— So if it said at that point in response to it, well, we don't know, we're just recommending it, that would be a problem for honoring the plea agreement. Well, Your Honor, in the plea agreement, it actually states that the parties have balanced the 3553A factor. So I'm thinking that if the court was wanting to know a little bit more, the government would engage and explain the reason behind that balancing. But to say that there was no balancing when baked into the plea agreement, it says the parties have analyzed the 3553A factors and are coming to this joint recommendation. Pursuant to that language and having a recommendation, the government fulfilled its duty. And I know that I only have one minute left, but if Your Honors would like me to switch gears and talk about the revocation hearing in this case. The prosecutor faithfully fulfilled his duties. By the time the revocation hearing came to be, when we look— There was a 30-second recommendation and a four-month possibility of a consecutive sentence. In conjunction, that would be 41 months if the district court accepted both governments' recommendations. By the time the revocation hearing came, that shift had passed. The court had already put in 71 months. And what do you have? You have a prosecutor here noticing and saying it to the court, specifically on page 84 of the appendix. He did not feel comfortable asking for an 84-month sentence because he didn't want to run afoul of the spirit of the plea agreement. If that's not advocating for that, I think that's a clear example of what it is. And while I did leave it— where the district court says, I don't think she would mind if you recommended a concurrent sentence, that seems wrong. Because there's no indication that, given what had transpired, that the defendant would have been fine with such a recommendation. Does that—I mean, what are we to make of that feature of the record? Two things, Your Honor. I think the court—what can be seen is that the court interpreted the prosecutor's statement as, you don't feel comfortable giving a consecutive, so that's concurrent. Now, whether it would have been a one-month concurrent or up to the statutory maximum for the revocation of supervised release, the total sentence would never have gone beyond 71 months. He seemed to ascribe an understanding to the defendant in entering into this agreement, wouldn't have minded at that point a recommendation for a concurrent sentence coming from the government. And I find it hard to see what supports that understanding by the district court. Well, two things. The government reserved the right to recommend up to four months. That doesn't mean it was going to do that. So any leniency was actually baked in, because it didn't say, we will recommend it reserved to the right. And another thing, Your Honor, which is an important aspect, which also turns to the standard of review here. If that actually had been an issue, at that point the defense could have gotten up and objected, but they didn't. So I think the court's appreciation of the issue, where the government was saying, wait, this was way higher than we anticipated, and then the court says, oh, well, then your recommendation for a concurrent, it wouldn't have had, if the court had imposed a concurrent sentence, any additional jail time put on the defendant. So thank you very much. Thank you, counsel. As there is no rebuttal, that concludes argument in this third case.